No. 14-3308 and No. 15-1839

*In the*

*United States Court of Appeals*

*For the Seventh Circuit*

KEVIN B. McCARTHY, et al.,

*Plaintiffs – Counter-Defendants – Appellees*

and

LANGSENKAMP FAMILY APOSTOLATE, et al.,

*Counter-Defendants – Appellees*

*v.*

PATRICIA ANN FULLER, also known as SISTER JOSEPH THERESE, et al.,

*Defendants-Counterclaimants – Appellants*

**Appeal from the United States District Court
For the Southern District of Indiana, Indianapolis Division
Case No. 1:08-cv-0994-WTL-DML
District Judge William T. Lawrence**

**BRIEF OF APPELLANTS**

Respectfully submitted,

S/ *Marilyn A. Cramer*

MARILYN A. CRAMER
Atty. Reg. No. 0032947 (OH)
THE CRAMER LAW GROUP, LLC
11470 Euclid Avenue, Suite 202
Cleveland, OH 44106
Telephone: (216) 650-2707
Fax:  (216) 421-7026
Marilyn.Cramer@gmail.com

*Counsel to Appellants*
*Patricia Ann Fuller, a.k.a.*
*Sister Mary Joseph Therese, CIT,*
*and Inspector Paul M. Hartman (Ret.),*
and
*Counsel In Propria Persona*
*as Respondent-Appellant*

## DISCLOSURE STATEMENT – REPRESENTATION STATEMENT

Pursuant to F.R.A.P. 26-1 and Circuit Rule 26-1, Appellants state that Marilyn A. Cramer, Ohio Attorney Registration Number 0032947, THE CRAMER LAW GROUP, LLC, 11470 Euclid Avenue, Suite 202, Cleveland, Ohio 44106, represented Appellants Patricia Ann Fuller, a.k.a. Sister Mary Joseph Therese, CIT, and Inspector Paul M. Hartman (Retired) in all of the federal district courts below, as well as during the previous three consolidated appeals in this Circuit, and now in the two consolidated appeals *sub judici*. Attorney Cramer also is appearing in Case No. 15-1839 as *Counsel In Propria Persona* as Respondent-Appellant.

The Appellants Ms. Cramer represents in this appeal do not include any corporations or partnerships. Neither Attorney Cramer nor THE CRAMER LAW GROUP, LLC represents or has represented any corporations or partnerships in connection with this litigation.

Attorney Cramer will be arguing these consolidated appeals on behalf of all Appellants.[1]

---

[1] As Fuller previously advised the Court, in Dkt. 33-1, p. 9, the Plaintiffs-Counter-Defendants/Appellees Kevin McCarthy, Albert Langsenkamp, BVM Foundation, Inc., and Counter-Defendant/Appellee Langsenkamp Family Apostolate have not filed an accurate and complete corporate disclosure statement. They have omitted listing their primary and lead law firm, who represented them for most of the years of this litigation in the district courts, and in this Circuit during the previous three interlocutory appeals, as well as other attorneys and law firms who have represented them. No attorney has entered an appearance herein for Counter-Defendant/Appellee Sigma Micro Corporation, who was represented in the lower court by the same attorneys as Plaintiffs-Counter-Defendants/Appellees. Thus, Sigma Micro Corporation has completely failed to file its required corporate disclosure statement.

## Nomenclature Utilized in This Brief

For ease of reference, while still avoiding terms like "appellants," "appellees," "plaintiffs," "defendants," "counterclaimants," and "counterclaims defendants," this brief will utilize the following names when referring to the parties.

### Appellants

The term "Fuller" will refer to and include, collectively, in the plural, both:

1. Appellant Sister Mary Joseph Therese, CIT, nee Patricia Ann Fuller, and

2. Appellant Inspector Paul M. Hartman (Retired).

Both were Defendants-Counterclaimants in the lower court. When only one of these parties is intended, this brief will refer to that party by longer name, such as "Patricia Fuller" or "Sister Therese" and "Inspector Hartman" or "Hartman," as the case may be.

The term "Attorney Cramer" will refer to and include the undersigned counsel for the Appellants, who is also appearing *In Propria Persona* as Respondent-Appellant in Case No. 15-1839.

### Appellees

The term "McCarthy" will refer to and include, in the plural, all of the following Appellees collectively:

1. Kevin B. McCarthy, a Plaintiff Counterclaims Defendant in the lower court;

2. Albert H. Langsenkamp, a Plaintiff Counterclaims Defendant in the lower court;

3. BVM Foundation, Inc., a Plaintiff Counterclaims Defendant in the lower court;

4.  Langsenkamp Family Apostolate, a Counterclaims Defendant in the lower court;

5.  Sigma Micro Corporation, a Counterclaims Defendant in the lower court;

6.  Larry Young, a Counterclaims Defendant in the lower court.

When Kevin McCarthy or any other Appellee is referenced individually, this brief will utilize that Appellee's longer name, *e.g.,* "Kevin McCarthy" refers to only Appellee Kevin McCarthy, whereas "McCarthy" refers to all appellees collectively.

# TABLE OF CONTENTS

DESCRIPTION                                                                              PAGE

Disclosure Statement – Representation Statement ........................................................i

Nomenclature Utilized in This Brief.......................................................................... ii

Table of Contents ........................................................................................................iv

Table of Authorities ....................................................................................................ix

Statement Regarding Oral Argument ......................................................................xiv

Jurisdictional Statement ..............................................................................................1

    A.  Jurisdiction of the District Court ....................................................................1

    B.  Jurisdiction of the Court of Appeals...............................................................2

Statement of the Issues ................................................................................................4

Statement of the Case and the Facts ...........................................................................8

Summary of the Argument.........................................................................................12

Standard of Review ....................................................................................................14

Argument....................................................................................................................17

    1.  The district court erred in awarding equitable relief to McCarthy
        In the form of a declaratory judgment and a permanent injunction, where:..17

        A.  The Judgment amounts to an unconstitutional prior restraint on
            Fuller's First Amendment fundamental rights to freedom of speech
            and the free exercise of their religion, .......................................................17

            (1) Reports to law enforcement agencies are protected. ........................21

            (2) Communications with Catholic clergy and Catholic organizations
                are a protected exercise of one's religion .........................................22

            (3) Inspector Hartman's blog postings are protected speech. ...............24

B. The injunction goes beyond and contradicts the specific verdicts, unlawfully prohibiting Fuller from publishing statements concerning the verdicts in Patricia Fuller's favor, ......................................25

C. The bad faith and unclean hands of McCarthy preclude them from receiving any form of equitable relief. ........................................................29

2. The district court erred in awarding hundreds of thousands of dollars to McCarthy, in compensatory and punitive damages for alleged defamation, where ..........................................................................39

A. McCarthy failed to present evidence showing they suffered any actual damages, ...........................................................................................39

B. There was no evidence that Patricia Fuller or Inspector Hartman published any statement with malice, and...................................................40

C. The judge failed to instruct the jury concerning the malice requirement.....................................................................................................41

D. The trial court deprived Hartman from testifying concerning the financial impact of the lawsuit on him and his family. ..........................................................................................42

3. It was error to grant McCarthy's Motion for *Judgment on the Pleadings* and summarily dismiss Fuller's *Counterclaims* charging McCarthy with civil RICO violations under federal and state law, where the court ignored the express pleadings in the *Amended Counterclaims* concerning the objectives of the criminal enterprise and demonstrating the continuity element............................................................44

4. The district court erred by holding that the magistrate's lack of jurisdiction was waived, where she denied and dismissed Fuller's unopposed Motion for Partial Summary Judgment, with no consideration on the merits, thereby prejudicing them before and during the trial, allowing McCarthy to proceed on frivolous claims, prolonging litigation, increasing costs, and ultimately confusing the jury. ...............................................................................................................47

5.  The district court erred by summarily dismissing, *sua sponte,* Patricia Fuller's unjust enrichment claim, *after* the case was submitted to the jury, without notice and briefing, in violation of her rights under the Fifth, Seventh, and Nineteenth Amendments to the United States Constitution. ..................................................................................... 47

6.  The district judge violated Indiana's "AntiSLAPP statutes," mandating an award of attorney's fees, when it entered its March 20, 2015 *Marginal Order,* containing no findings or stated grounds (Dkt. 976) for denying "Inspector Paul M. Hartman's Motion for Attorney's Fees and Costs, Pursuant to Indiana Code Section 34-7-7-7" (Dkt. 897 and 952) ........................................................................................................ 47

7.  Fuller's *Motion to Disqualify the Trial Judge and Magistrate* (Dkt. 889, 890) should have been granted, where they presented compelling evidence of pervasive judicial bias by the district judge and the magistrate, before, during, and after trial, including, but not limited to repeated violations of their Due Process rights, and the absence of neutrality and impartiality by the court, which became another advocate for McCarthy, making rulings that prevented Fuller from presenting their defenses and advancing their own claims. ........................... 47

8.  It was error for the court to award hundreds of thousands of dollars in attorneys' fees and costs to McCarthy, when they previously deducted those fees and costs from their income taxes as charitable contributions, and where: ............................................................... 48

    A.  The court, on its own, arbitrarily calculated the fees, because the attorneys failed to maintain proper documentation, ................................... 48

    B.  The court failed to utilize the Lodestar or any other accepted method for determining reasonable fees, ..................................................... 48

    C.  The court failed to scrutinize the alleged costs in any manner, and ......... 48

    D.  The court ignored McCarthy's bad faith and unclean hands, which bar them from receiving any award. ............................................................ 48

9.  Whether it constituted reversible retaliation when the district judge ordered Attorney Cramer to pay opposing counsel $6,700 and the court $150 as a "sanction" for the manifestation of her disability: ........................... 49

　A. Where the district judge expressly found that she did not act willfully or with bad intent, ........................................................... 49

　B. Where the judge arbitrarily computed the amount of the sanctions and ignored the fact that the attorneys were already paid for their time, ............................................................................................ 49

　C. Where the penalties were imposed on grounds that no party had raised, ............................................................................................. 49

　D. Where the judge did not impose the penalties during trial or after trial, .................................................................................................. 49

　E. Where the judge did not impose the penalties in the March 19, 2014 *Judgment*, ...................................................................................... 49

　F. Where the judge did not impose the penalties in the September 18, 2014 *Amended Judgment*, ......................................................... 49

　G. Where the judge imposed the sanctions only *after* Attorney Cramer filed the *Motion to Disqualify the Trial Judge and Magistrate*, and ......... 49

　H. Where the judge ignored the more serious and egregious misconduct, bad faith and unclean hands of the attorneys for McCarthy ................................................................................................ 49

10. The judgments for McCarthy on most of Fuller's Counterclaims lack supporting evidence and instead resulted because the court failed to adhere to the Seventh Circuit's ruling in the previous interlocutory appeals and refused to properly instruct the jury concerning the limited relevance of Patricia Fuller's status as a nun ...................................... 52

11. The district court applied the wrong standard when granting McCarthy summary judgment on Inspector Hartman's defamation claims, and Patricia Fuller's claims for copyright, trade dress, and trademark infringement, and by dismissing Sigma Micro Corp. after telling Fuller not to brief the motion and then dismissing Sigma before it complied with discovery requests. ................................................ 52

Conclusion ........................................................................................................54

Certificate of Compliance with Type – Volume Requirements,
Typeface Requirements, and Type-Style Requirements .......................................... N/A

Certificate of Service ................................................................................................ N/A

Addendum – State Statutes

Appendix (Volumes I through V)

Addendum – Exhibits

# TABLE OF AUTHORITIES

CASES                                                                                                          PAGE

*AAFCO Heating & Air Con., Co. v. Northwest Pub., Inc.,*
321 N.E.2d 580 (Ind.Ct.App. 1974) ........................................................................40-41

*ABF Freight System, Inc. v. N.L.R.B.,* 510 U.S. 317 (1994) ..................................34-35

*Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290 (11th Cir. 2008) .................24

*Allen v. Chicago Transit Authority,* 317 F.3d 696 (7th Cir. 2003) .............................35

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240 (1975) .......................38

*Aoude v. Mobil Oil Corp.,* 892 F.2d 1115 (1st Cir. 1989) ...........................................32

*Bantam Books, Inc. v. Sullivan,* 372 U. S. 58 (1963) ..................................................19

*Bein v. Heath*, 6 How. 228, 12 L.Ed. 416 ..............................................................36-37

*Bender v. Williamsport Area School District*, 475 U.S. 534, 542 (1986).....................1

*Bettendorf v. St. Croix County,* 631 F.3d 421 (7th Cir, 2011) ....................................46

*Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485 (1984)............14

*Boule v. Hutton*, 328 F.3d 84 (2d Cir. 2003)...............................................................24

*Brandom v. Coupled Products,* 975 N.E.2d 382 (Ind. App. 2012) .......................19, 25

*Brown v. Indianapolis Housing Authority,* Case No. 49A05-1111-CT-648
(Ind. Ct. App., Jul. 24, 2012) ......................................................................................23

*Browning-Ferris v. Kelco Disposal,* 492 U.S. at 257 (1989)......................................43

*Carroll v. Princess Anne,* 393 U. S. 175 (1968) .........................................................18

*Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991)...........................................................38

*Cheatham v. Pohle,* 789 N.E.2d 467 (Ind. 2003) .......................................................43

*Church of Scientology v. Wollersheim*, 42 Cal.App.4th 628,
49 Cal.Rptr.2d 620 (1996).............................................................................................25

CASES, CONTINUED                                                                          PAGE

*City of Indianapolis v. Heath,* 686 N.E.2d 940 (Ind. App.1997) ................................ 20

*Connick v. Myers,* 461 U.S. 138 (1983) ...................................................... 20

*Cook v. City of Chicago*, 192 F.3d 693 (7th Cir. 1999) ................................... 16

*Cooperman Industries, Inc. v. Leatherman Tool Group, Inc.,*
532 U.S. 424  (2001) ...................................................................... 14

*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990).............................. 15

*Coppolillo v. Cort*, 947 N.E.2d 994 (Ind. App., 2011) ............................. 38

*Deweese v. Reinhard*, 165 U.S. 386 (1897) ............................................. 37

*Doe v. Methodist Hospital, 690 N.E.2d 681 (Ind. 1997)* ............................ 24

*EEOC v. O & G Spring & Wire Forms Specialty Co.,* 38
38 F.3d 872 (7th Cir.1994)............................................................... 38

*Fay v. Noia,* 372 U.S. 391 (1963) ...................................................... 46

*Gamboa v. Velez*, 457 F.3d 703 (7th  Cir. 2006) ...................................... 44

*Gentile v. State Bar of Nevada,* 501 U.S. 1030 (1991) .............................. 20

*Goldberg v. Kelly,* 397 U.S. 254 (1970) .............................................. 46

*Hall v. Cole,* 412 U.S. 1 (1973) ....................................................... 39

*Hamilton v. Prewett*, 860 N.E.2d 1234 (Ind.Ct.App. 2007) ........................ 19

*Harris v. Thompson,* 698 F.3d 609 (7th Cir. 2012)................................... 47

*Hibschman Pontiac, Inc. v. Batchelor,* 266 Ind. 310 (1977)......................... 43

*Holmes v. South Carolina,* 547 U.S. 319 (2006) ..................................... 47

*Homes Group, Inc. v. Vornado Air Circulation Systems, Inc.,*
535 U.S. 826, 831  (2002) ................................................................. 2

Cases, Continued                                                        Page

*In Re Indiana Newspapers, Inc.*, 963 N.E.2d 534 (Ind. App. 2012) ....................19, 40

*In re TCI, Ltd.,* 769 F.2d 441 (7th Cir.1985) ...............................................39

*Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383 (1944)............................................36

*Journal-Gazette v. Bandido's, Inc.,* 712 N.E.2d 446 (Ind. 1999) ..........................27, 41

*Kelley v. Tanoos,* 865 N.E.2d 593 (Ind. 2007) ......................................................21, 40

*Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1933)....................36-38

*Kotsilieris v. Chalmers,* 966 F.2d 1181 (7th Cir.1992) ..............................................39

*Lach v. Lake Cnty.*, 621 N.E.2d 357 (Ind.Ct.App.1993)........................................20, 40

*Loughran v. Loughran*, 292 U.S. 216 (1934) ...............................................36

*Mach v. Will County Sheriff,* 580 F.3d 495 (7ᵗʰ Cir. 2009) ........................................39

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ...............................................47

*Mishler v. MAC Sys., Inc.*, 771 N.E.2d 92 (Ind.Ct.App.2002)............................19, 40

*Near v. Minnesota ex rel Olson*, 283 U.S. 697 (1931) ..................................................19

*New York Times Co. v. Sullivan*, 376 U. S. 254  (1964)............................................14

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989)............................1

*Obsidian Finance Group LLC v. Cox*, __F.3d___ (Nos. 12-35238, 12-35319,
9th Cir. Jan. 17, 2014) .........................................................................24

*Olmstead v. United States*, 277 U.S. 438 (1928) ........................................................34

*Organization for a Better Austin v. Keefe,* 402 U.S. 415 (1971) ................................19

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,*
324 U.S. 806 (1945)............................................................................36

*Rambo v. Cohen*, 587 N.E.2d 140, 145 (Ind. App.1992), trans. denied. ....................22

CASES, CONTINUED                                                      PAGE

*Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980) ................................39

*Ruder v. Ohio Valley Wholesale, Inc.,* 736 N.E.2d 776 (Ind. App., 2000) .................38

*Schrader v. Eli Lilly and Co.,* 639 N.E.2d 258 (Ind.1994)..........................................40

*Smith v. Sperling,* 354 U.S. 91, 93, n.1 (1957)...........................................................1

*Stewart v. Jackson,* 635 N.E.2d 186 (Ind.Ct.App.1994)..............................................38

*Stive v. United States,* 366 F.3d 520 (7th Cir.2004) .................................................38

*Stroud v. Lints,* 790 N.E.2d 440 (Ind.2003) ................................................................43

*T.B. Harms Co. v. Eliscu,* 339 F.2d 823 (2nd Cir. 1964) ...............................................3

*Thomas v. General Motors Acceptance Corp.,* 288 F.3d 305 (7th Cir. 2002) ..............14

*TXO Production Corp. v. Allied Resources Corp.,* 509 U.S. 443 (1993) .....................44

*Ty Inc. v. Softbelly's, Inc. (Ty II),* 517 F.3d 494 (7th Cir. 2008) ................................32

*Ty, Inc. v. Softbelly's, Inc.,* 353 F.3d 528 (7th Cir. 2003) ..........................................35

*United States v. Dunnigan,* 507 U.S. 87 (1993) .........................................................35

*United States v. Payner,* 447 U.S. 727 (1980) ...........................................................34

*Wedgewood Community Association, Inc. v. Nash,*
810 N.E.2d 346 (Ind., 2004) ...........................................................................35, 37

*Williams v. Tharp,* 914 N.E.2d 756 (Ind. 2009) .........................................................23


STATUTES

28 U.S.C. §1291 ........................................................................................................2-3

28 U.S.C. §1332 ...........................................................................................................1

28 U.S.C. §1338 .........................................................................................................1-2

STATUTES, CONTINUED                                                PAGE

Indiana Code (IC)

IC §34-7-7-1, *et seq*..............................................................................5, 47

IC §35-45-6-2 ..........................................................................................44


RULES

Fed.R.App.P.4...........................................................................................2

Fed.R.Civ.P. 11(b)(4)..............................................................................29

Fed.R.Civ.P.12(C)...................................................................................15

Fed.R.Civ.P. 26-1.......................................................................................i

Fed.R.Civ.P. 59....................................................................................3, 42

Fed.R.Civ.P. 60....................................................................................3, 35

Circuit Rule 26-1.........................................................................................i

S.D.Ind.L.R. 7-1(e)(1). .....................................................................17, 32


OTHER AUTHORITIES

Erwin Chemerinsky*, Injunctions in Defamation Cases*, 57 Syr. L.Rev. 157 .............19

1 Dan B. Dobbs *Law of Remedies* 2.4(2) (2d ed.1993)..........................................35, 37

2, *Equity Jurisprudence* (5th Ed.) §§ 397-399. ............................................................36

Pomeroy, *Equity Jurisprudence* (4th Ed.) §397 ........................................................37

Story's *Equity Jurisprudence* (14th Ed.) § 98...............................................................36

INSD Pattern Civil Jury Instructions, 9.01 (Revised 2009) ........................................41

# STATEMENT REGARDING ORAL ARGUMENT

Appellants Patricia Fuller, Inspector Hartman, and the undersigned counsel respectfully submit that oral argument will significantly aid the Court's decisional process, in light of the federal and state Constitutional issues these consolidated appeals raise, the number and complexity of other important issues, and the public interest in the issues (whether truthful blogging may be permanently enjoined, speech permanently chilled, and the free exercise of religion suppressed; whether victims of crime must fear for their physical safety, suffer defamation, and incur depletion of their financial resources by vexatious litigation, if they report crimes to law enforcement agencies or if they report corruption of clergymen; whether fraudulent "non-profit organizations" will be permitted to launder money and facilitate tax evasion; whether cyberpiracy will be tolerated; and whether registered copyrights and trademarks can be rendered meaningless by wealthy perpetrators.)

The page limitations on briefs have prevented a more detailed presentation of the facts and legal argument pertaining to some issues. Consolidation reduced even further the number of pages for briefing these appeals, rendering oral argument all the more significant to advance the interests of justice.

As shown herein, the lower court repeatedly denied Fuller their Due Process rights of notice and a meaningful opportunity to be heard. Oral argument of sufficient length is necessary to avoid denying them a meaningful opportunity to be heard, at least on appeal. Given all of the above-factors, Fuller respectfully request more than 15 minutes to present their oral argument.

# JURISDICTIONAL STATEMENT

## A. Jurisdiction of the District Court

Appellants respectfully submit that the District Court lacked subject matter jurisdiction. Subject matter jurisdiction may be questioned at any time, including on appeal. *Bender v. Williamsport Area School District*, 475 U.S. 534, 542 (1986).

The existence of federal jurisdiction depends on the facts as they existed when the complaint was filed. *Smith v. Sperling*, 354 U.S. 91, 93, n.1 (1957). Under the well-pleaded complaint rule, Plaintiffs pleaded causes of actions under Indiana state law, sought declarations of non-infringement of trademark and copyright, and cited diversity of citizenship under 28 U.S.C. 1332, and federal question jurisdiction under 28 U.S.C. 1338. See *Amended Complaint*, Doc. 26, page 2 (APX 126-127).

Plaintiffs pleaded "residency" of the parties, however, and not their "domiciles." They did not plead the corporate citizenship of BMV Foundation, Inc. or its principal place of business. Nor did they prove domicile of the parties at trial. Therefore, their pleading and proof is improper and demonstrates a lack of subject matter jurisdiction. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989).

Plaintiffs sought declaratory judgments for non-infringement of trademark and copyrights. This type of claim does not "arise under" the trademark or copyright laws of 28 U.S.C. 1338. *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2nd Cir. 1964)(Friendly, J.).

The *Amended Answer* and *Counterclaim*s invoked diversity of citizenship and federal question claims 28 U.S.C. 1331, 1338. However, it is clear that the "well-pleaded counterclaim" does not grant a federal court original subject matter jurisdiction. *Homes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 831 (2002)(Scalia, J.). It is the well-pleaded complaint that must do so.

*Because of the patent failure of Plaintiffs to properly plead and prove the district court's subject matter jurisdiction, the judgment below must be vacated and the lower court instructed to dismiss the case for want of subject matter jurisdiction.*

## B. Jurisdiction of the Court of Appeals

Pursuant to 28 U.S.C. §1291 and Fed.R.App.P.4(a), the Seventh Circuit Court of Appeals has appellate jurisdiction over the final orders of the district court, to wit:  the September 18, 2014 Order granting a permanent injunction and an *Amended Judgment* to the March 19, 2014 *Judgment*, and interlocutory orders occurring prior to September 18, 2014. The final orders disposing of attorneys' fees, costs, and sanctions are appealable under 28 USC §1291 and Fed.R.App.4. Interlocutory orders (e.g., the retaliation against counsel for moving to disqualify the trial court and pointing out the pervasive bias is appealable, as well as the district court's conduct and retaliation against the attorneys' disability under the Americans with Disabilities Act. *See e.g.,* Dkt. 856, 976 and 977.

Case No. 14-3308

On March 19, 2014, the trial court issued its *Entry on Rule 50 Motions and Other Matters* (Dkt. 828) and entered its *Judgment* (Dkt. 829) on that same date. Fuller and Appellees filed Rule 59 motions. Fuller filed a Rule 60 motion.

On April 16, 2014, Fuller filed a *Motion to Alter and Amend Judgment*, pursuant to Fed. Civ. P. Rule 59(e) (Dkt. 838,) with May 2, 2014 *Reply* (Dkt. 849); an April 21, 2014 *Motion for New Trial,* pursuant to Fed. Civ. P. Rule 59(b) (Dkt. 844, 844-1,) with May 3, 2014 *Reply* (Dkt. 850,) and re-filed per court order (as Dkt. 855) on September 18, 2014. They also filed an April 21, 2014 *Motion for Relief from Judgment,* pursuant to Rule 60(b)(3) and 60(d)(3) (Dkt. 843, 843-1,) with an April 29, 2014 *Reply* (Dkt. 848). McCarthy also filed post trial motions. Timely Rule 59 motions filed by any party tolled the time for filing their joint *Notice of Appeal.* F.R.A.P. 4(a)(4)(A)(i), (ii)(iv)(v) and (vi).

On September 18, 2014, the trial court *denied* Fuller's post-trial motions (Dkt. 854) and issued its *Amended Judgment* (Dkt. 856).

Case No. 15-1839

After the district court's additional final orders, entered on March 20, 2015, pertaining to attorneys' fees and sanctions (Dkt. 976 and 977), Appellants Fuller, Hartman, and Cramer, timely filed their joint *Notice of Appeal* on April 17, 2015, (*Notice of Appeal* Dkt. 1, Dkt. 979 and 987, *Information Sheet* Dkt. 981, *Short Record* Dkt. 980). Title 28 U.S.C. §1291 vests the Court with appellate jurisdiction.

On May 8, 2015, the Court consolidated the two appeals. (Dkt. 52 ).

## STATEMENT OF THE ISSUES

I.   Whether the district court erred in awarding equitable relief to McCarthy in the form of a declaratory judgment and a permanent injunction, where:

   A. The Judgment amounts to an unconstitutional <u>prior restraint</u> on Fuller's First Amendment fundamental rights to freedom of speech and the free exercise of their religion,

   B. The injunction goes beyond and contradicts the specific verdicts, unlawfully prohibiting Fuller from publishing statements concerning the verdicts in Patricia Fuller's favor, and

   C. The bad faith and unclean hands of McCarthy preclude them from receiving any form of equitable relief.

II.  Whether the district court erred in awarding hundreds of thousands of dollars to McCarthy, in compensatory and punitive damages for alleged defamation, where:

   A. McCarthy failed to present evidence showing they suffered any actual damages,

   B. There was no evidence that Patricia Fuller or Inspector Hartman published any statement with malice,

   C. The judge failed to instruct the jury concerning the malice requirement, and

   D. The trial court deprived Hartman from testifying concerning the financial impact of the lawsuit on him and his family.

III. Whether it was error to grant McCarthy's Motion for Judgment on the Pleadings and summarily dismiss Fuller's *Counterclaims* charging McCarthy with civil RICO violations under federal and state law, where the court ignored the express pleadings in the *Amended Counterclaims* concerning the objectives of the criminal enterprise and demonstrating the continuity element.

IV.   Whether the district court erred by holding that the magistrate's lack of jurisdiction was waived, where she denied and dismissed Fuller's unopposed Motion for Partial Summary Judgment, with no consideration of the merits, thereby prejudicing them before and during the trial, allowing McCarthy to proceed on frivolous claims, prolonging litigation, increasing costs, and ultimately confusing the jury.

V.    Whether the district court erred by summarily dismissing, *sua sponte,* Patricia Fuller's unjust enrichment claim, *after* the case was submitted to the jury, without notice and briefing, in violation of her rights under the Fifth, Seventh, and Nineteenth Amendments to the United States Constitution.

VI.   Whether the district judge violated Indiana's "AntiSLAPP statutes," mandating an award of attorney's fees, when it entered its March 20, 2015 *Marginal Order,* containing no findings or stated grounds (Dkt. 976) for denying "Inspector Paul M. Hartman's Motion for Attorney's Fees and Costs, Pursuant to Indiana Code Section 34-7-7-7" (Dkt. 897 and 952).

VII.  Whether Fuller's Motion to Disqualify (Dkt. 889, 890) should have been granted, where they presented compelling evidence of pervasive judicial bias by the district judge and magistrate, before, during, and after trial, including, but not limited to repeated violations of their Due Process rights, and the absence of neutrality and impartiality by the court, which became another advocate for McCarthy, making rulings that prevented Fuller from presenting their defenses and advancing their own claims.

VIII. Whether the court can award hundreds of thousands of dollars in attorneys' fees and costs to McCarthy, when they previously deducted those fees and costs from their income taxes as charitable contributions, and whether it was error to award costs and fees where:

A. The court, on its own, arbitrarily calculated the fees, because the attorneys failed to maintain proper documentation,

B. The court failed to utilize the Lodestar or any other accepted method for determining reasonable fees,

C. The court failed to scrutinize the alleged costs in any manner, and

D. The court ignored McCarthy's bad faith and unclean hands, which preclude them from receiving any award.

IX. Whether it constituted reversible retaliation when the district judge ordered Attorney Cramer to pay opposing counsel $6,700 and the court $150 as a "sanction" for the manifestation of her disability:

A. Where the district judge expressly found that she did not act willfully or with bad intent,

B. Where the judge arbitrarily computed the amount of the sanctions and ignored the fact that the attorneys were already paid for their time,

C. Where the penalties were imposed on grounds that no party had raised,

D. Where the judge did not impose the penalties during trial or after trial,

E. Where the judge did not impose the penalties in the March 19, 2014 Judgment,

F. Where the judge did not impose the penalties in the September 18, 2014 Amended Judgment,

G. Where the judge imposed the sanctions only *after* Attorney Cramer filed a *Motion to Disqualify* the district judge and magistrate, and

H. Where the judge ignored the more serious and egregious misconduct, bad faith and unclean hands of the attorneys for McCarthy.

X.     Whether the judgments for McCarthy on most of Fuller's Counterclaims lack supporting evidence and instead resulted because the trial court failed to adhere to the Seventh Circuit's ruling in the previous interlocutory appeals and refused to properly instruct the jury concerning the limited relevance of Patricia Fuller's status as a nun.

XI.    Whether the district court applied the wrong standard when granting McCarthy summary judgment on Inspector Hartman's defamation claims, and Patricia Fuller's claims for copyright, trade dress, and trademark infringement, and by dismissing Sigma Micro after telling Fuller not to brief the motion and then dismissing Sigma before it complied with discovery requests.

.

## STATEMENT OF THE CASE AND THE FACTS

The *Amended Counterclaims* (APX 300); Fuller's *Trial Brief,* (Dkt. 386); and Fuller's *Opposition to Partial Summary Judgment,* (Dkt. 73; Dkt.283; Dkt. 628) each contain a more detailed statement of the facts, concerning the apparitions of the Blessed Virgin Mary, the Devotion to her under the title Our Lady of America®, and the efforts of the visionary, Sister Mildred, along with Sister Therese, nee Patricia Fuller, to spread the messages of Our Blessed Mother and to encourage devotion to her.

Fuller is the lawful owner of the copyright protecting the Book of Messages imparted to Sister Mildred Neuzil by the Blessed Virgin, the basis of the Devotion to Our Lady of America  (Hartman Depo., Vol. 2, 462-463, 585). Langsenkamp & McCarthy descended upon Fuller, offering to assist Patricia Fuller in "promoting" the Devotion under the pretense they "knew the bishops" of the Church.  (Hartman, Vol. 1, Tr. at 67).

In short order, Langsenkamp and  McCarthy stole Fuller's Archival Statue, and plaque of Our Lady of America as well as her Crucifix from her convent. (Hartman, Vol. 1, Tr.at 75. 86-89) (Hartman Depo., Vol. 3, Tr. at 625-634). Langsenkamp also stole Fuller's website found at www. Ourladyofamerica.com and infringed Fuller's copyright protections.  (Fuller, Depo Vol. 1, Tr. at , 109, 310).

Fuller owned Key Bank stock, matured to a value in excess of $1million that had Helen Whitta donated to her and Sister Neuzil around 1993. (Hartman Depo., Tr. at 72-74). Langsenkamp and McCarthy persuaded Fuller to liquidate her Key

Bank stock and then swindled more than $750,000 of the proceeds from her. (Hartman Depo., Vol. 2, Tr. at 331). McCarthy threatened her personal safety. (Hartman Depo, Vol. 1, Tr. at 199-206). Hartman published a blog intended to redirect the animus of Langsenkamp and McCarthy away from Fuller and toward himself. (Hartman Trial, Vol. 15, Tr. at 2684). Hartman published only truthful, accurate information, supported by documentary evidence. (Hartman Trial, Vol. 25, Tr. at 5039).

When Patricia Fuller demanded the return of her property, McCarthy, Langsenkamp, his company Sigma Micro, and BVM filed a frivolous lawsuit against her, Ms. Parlacoski and another volunteer, on January 16, 2008. The suit was dismissed in March 2008. When she continued to seek the return of her property and her web sites, they filed the case that is currently the subject of this appeal, on July 25, 2008.

After years of extensive, contested discovery, an eight-week trial ensued. McCarthy never did produce requested documents, despite many motions Fuller filed and court orders that McCarthy produce documents. (Dkts. 166, 167, 169, 221, 331, 358, 469, .471, 490, 830, Page ID1961, Dkt. 14-3308-33-1, p.8 n4, and Dkt. 33-8 (documenting inadvertent disclosure identifying 190 pages of "Communications To/From, Archbishop Burke" that McCarthy deliberately and wrongly withheld from Fuller in discovery).

Trial commenced on January 21, 2014, with Fuller and the court anticipating a four-week trial. McCarthy, however, took four weeks to present their rambling case.

Thereafter, the trial court pushed Fuller to rush through their case in a few short days, preventing them from fully presenting their evidence. The judge also gave the jurors a four-day weekend in the middle of the trial, preventing Fuller's New Jersey witness from completing her testimony because she could not stay that many days to conclude in the following week.

At that time, Sister was in dangerously poor health, wheelchair bound. She was hospitalized three times during the trial. Fuller had 14 boxes of trial exhibits and, with no witness room for all but one of the eight weeks when the court gave them a brief turn, they had to lug these boxes through the snow, daily, up and down the courthouse steps, because the handicap entrance was not functioning, all while navigating Sister Therese in a wheel chair.

Fuller's counsel suffers disabilities, which she drew to the attention of the trial court. The judge disregarded them and failed to offer her reasonable accommodation. In fact, he required counsel to perform in a manner intended to exacerbate her disabilities. Nevertheless, counsel was late only two times, and just by a few minutes for morning pretrial conferences prior to jury time. One of those times included a morning when Sister Therese was taken by EMS to the hospital.

On October 17, 2014, Fuller filed their joint appeal of the *Amended Judgment*, with interlocutory orders (Dkt. 862; Dkt. 14-3308-1). After Fuller appealed the pervasive judicial bias and also filed a motion to disqualify the district judge, he decided to punish her and Sister Therese with sanctions, ordering Sister to pay McCarthy several hundred thousand dollars in attorneys' fees and Cramer to

10

pay the attorneys $6,500. McCarthy testified and documents confirm that they had been deducting their attorneys' fees as charitable donations from their Federal income taxes, actually laundering payment of attorneys' fees through the BVM Foundation. The judge permitted Langsenkamp to testify this unlawful practice was "perfectly legal."

On April 20, 2015, Fuller and Attorney Cramer timely filed their appeal of subsequent orders pertaining to attorneys' fees and sanctions (Case No. 15-1839).

## Summary of the Argument

Demonstrating a pattern of pervasive judicial bias, both the district judge and the magistrate deprived Fuller of their fair day in court. Consistently rubber-stamping McCarthy's demands, regardless of contrary legal precedent, the lower court disregarded the first rule of civil procedure: the Rules are to be construed to achieve justice.

After a series of erroneous partial summary judgment rulings, the district judge imposed bizarre trial procedures, which operated to emasculate the crucible of cross-examination and confused the jury, resulting in illogical and inconsistent verdicts. *E.g.*, the court required the parties to identify to their opponents, in advance, the exact documents they intended to utilize on cross-examination. They also had to provide additional copies of the specific documents, even though they had previously provided the documents in discovery and again with their list of trial exhibits. McCarthy's attorney stated, "I would also note, Your Honor, that all these exhibits – we should have had these last night to prepare to go over with our client. We're not going to get an opportunity to do that now, and she's going to cross him." (APX 817.)

The court imposed the burden of requiring nine copies of all exhibits. Fuller had 1,000 trial exhibits and bore the needless extra expense of copying more than 65,000 pages of exhibits, which ultimately the court did not need. The court also required seven copies of all deposition transcripts that were read at trial, another needless expense for no purpose. Fuller had to transport these items in and out of

the courthouse daily, back and forth to a hotel room, because the court gave its one and only witness room to McCarthy, whose lawyers had offices across the street from the courthouse.

Fuller's attorney has been a federal trial attorney for almost 40 years, trying criminal cases as an Assistant U.S. Attorney, and handling complex cases as a senior trial attorney with the Antitrust division.    Contrary to the court's misrepresentations, she knew exactly how to present Fuller's case, having lost only three cases out of hundreds in her career.

The judge imposed his own structure, however, with over 50 pages of unworkable jury verdict forms that only operated to further confuse the jury. Shockingly, the judge allowed jurors to talk with each other during testimony – which was not only distracting to other jurors, but also very disconcerting to counsel while she was questioning witnesses.

Although this Court disfavors summaries that merely repeat the argument headings, the Statement of the Issues herein best summarizes Fuller's arguments. The page limitation already prevents breifing of all of the issues, none of which Fuller waives. Rather, they rely upon the designated portions of the record, oral argument, and their briefs in the lower court. Fuller relies upon the self-explanatory Statement of the Issues as the remainder of their summary.

## STANDARD OF REVIEW

**Issues I, II, V, VI, and VII:** Under *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 499-504 (1984), an appellate court makes an independent review of the record in cases involving First Amendment speech and religion ("an appellate court has an obligation to "make an independent examination of the whole record" in order to make sure that "the judgment does not constitute a forbidden intrusion on the field of free expression" [citing, *New York Times Co. v. Sullivan,* 376 U. S. 254 at 284-286 (actual malice)]. Constitutional rights and issues warrant *de novo* review. As the Supreme Court held in *Cooperman Industries, Inc. v. Leatherman Tool Group, Inc.*, 532, U.S. 424, 431-36 (2001):

> Our decisions in analogous cases [Fourth Amendment], together with the reasoning that produced those decisions, thus convince us that courts of appeals should apply a de novo standard of review when passing on district courts' determinations of the constitutionality of punitive damages awards.

*Id.*, 532 U.S. at 536.

*Cooperman* applied to punitive damages awards and concerns over infringement of the Seventh Amendment; it applies to constitutional issues. *See Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305, 307 (7th Circuit 2002)(Posner, J.)(noting plenary review is for questions of law, including constitutional law). Questions of actual malice, public or private figure, and punitive damages, as well as compensatory damages chilling speech, warrant plenary or *de novo* review. Moreover, mixed questions of fact and law obtain plenary review. *Id.*

**Issue III:** A judgment on the pleadings Fed.R.Civ.P. 12(C) is reviewed as a matter of law and is plenary. *Thomas, supra*, 288 F.3d at 307.

**Issue IV:** Issues of jurisdiction (and waiver) are issues of law and are reviewed *de novo.* No deference is given to the decision of the trial court.

**Issue VII:** To the extent the denial of attorneys fees under the Indiana Anti-SLAPP law was based upon a misapplication of law, review is *de novo*; alternatively, the standard can be abuse of discretion found in Issues VIII-IX and *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399-405 (1990). Since the district court denied Hartman's motion in a marginal entry, stating no grounds, review is *de novo.*

**Issues VIII-IX:** The lower court's imposition of sanctions is reviewed under abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399-405 (1990). In the sanctions context, "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."

**Issue X:** The law of the case involves an issue of law, following the ruling of a superior court and the proper allocation of authority between a superior and inferior court; hence, review is plenary. Alternatively, review would be abuse of discretion, but a district court misapplying the law of the case would misapprehend the law and therefore abuse its discretion. *Cooter & Gell, supra.*

**Issue XI:** Summary judgment involves undisputed material facts and an issue of law. Review is plenary. *Cook v. City of Chicago*, 192 F.3d 693, 697 (7th Cir.

1999)("review is plenary because it is intolerable to have the law differ from district judge to district judge.")

# ARGUMENT

**1. The district court erred in awarding equitable relief to McCarthy in the form of a declaratory judgment and a permanent injunction.**

> **A. The Judgment amounts to an unconstitutional *prior restraint* on Fuller's First Amendment fundamental rights to freedom of speech and the free exercise of their religion.**

Although the jury found Fuller generally liable to McCarthy for defamation, they did not return a verdict identifying any particular statement as defamatory; nor did they return a verdict identifying which manner of alleged publication constituted the defamation. McCarthy had alleged they were defamed by Fuller's complaint to the Indiana disciplinary committee against attorney Kevin McCarthy, Fuller's reports to law enforcement, Inspector Hartman's Internet blog, and Fuller's letters to certain bishops seeking their help to obtain the return of stolen property from Kevin McCarthy and Albert Langsenkamp. (Dkt. 826, Page ID 17743-17746).[2] For a more detailed discussion of prevailing law offered to, but rejected by, the lower court, *see* Fuller's *Opposition* (Dkt. 851) to McCarthy's *Motion for Permanent Injunction* (Dkt. 839).

Despite the importance of this constitutional issue, the lower court refused to consider Fuller's *Opposition* on the grounds that it was "too long." The judge reached this erroneous conclusion because, contrary to S.D.Ind.L.R. 7-1(e)(1), he

---

[2] The trial court denied Fuller the opportunity to submit proposed jury instructions on July 27, 2012 (Dkt. 482,) eighteen months prior to trial, yet permitted McCarthy a *de facto* third amended complaint days before trial expanding the alleged defamation to years beyond the dates in the Amended Complaint, thereby violating Due Process by denying Fuller notice, discovery, and an opportunity to answer or otherwise respond to the newly invented claims.

counted the excludable pages, which bore Roman numerals. Instead, the lower court rubber-stamped, word for word, McCarthy's permanent injunction (Dkt. 856,) an unconstitutional restraint of free speech. *Compare* Dkt. 839-1, Dkt. 856, Page ID 21176-21177.   *See also* Dkt. 851, Page ID 19134-19138, 19142-19147.

The jury never specifically found that any one of the enjoined statements was defamatory. Moreover, the overbroad injunction permanently enjoins Fuller from publishing truthful and accurate statements pertaining to McCarthy's unlawful and immoral conduct, even though the evidence demonstrated that all of the alleged defamatory statements are supported both by documentary evidence and sworn testimony.

Reaching far beyond the verdicts, the judge interjected his own interpretation of the verdicts, assuming that the jury found the blog postings to be defamatory. There was no verdict specifying any statement in the blog as defamatory or even finding that the blog in any manner defamed anyone. (*Verdict Forms*, Dkt. 826 and 827.)

Without legal or factual support, the lower court ordered Hartman to permanently remove his entire blog from publication, even though it addresses matters unrelated to McCarthy' and their unlawful conduct, thus also transgressing Hartman's free expression of his religious beliefs. *See* Dkt.851, Page ID 19147-19149, 19173-19175. *See also* Docs. 858, 860, 861, 892, Page ID 24432.

The Supreme Court has held, "Any prior restraint on expression comes to this Court with a "heavy presumption" against its constitutional validity." *Carroll v.*

*Princess Anne,* 393 U. S. 175, 393 U. S. 181 (1968); *Bantam Books, Inc. v. Sullivan,* 372 U. S. 58, 372 U. S. 70 (1963). Thus, Plaintiffs carry a heavy burden to justify the imposition of such a prior restraint. *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419 (1971).  *See also Near v. Minnesota ex rel Olson*, 283 U.S. 697 (1931) (holding future injunction against speech previously found defamatory to be an unconstitutional prior restraint); Erwin Chemerinsky, Injunctions in Defamation Cases, 57 Syr. L.Rev. 157, 164 (summarizing law) (discussing *Near v. Minnesota ex rel Olson*, 283 U.S. 697 (1931) and English courts rejections of injunctions in defamation cases).

Plaintiffs' real objective has been to shut down the website and silence anyone who reveals their crimes. Thus, their motion for a permanent injunction reveals that their claims have been, all along, a SLAPP Lawsuit. SLAPPs, an acronym for Strategic Lawsuits Against Public Participation, are "*meritless suits aimed at silencing a plaintiff's opponents, or at least at diverting their resources.*" *Hamilton v. Prewett*, 860 N.E.2d 1234, 1241–42 (Ind.Ct.App.2007).

Indiana's anti-SLAPP statute is intended to reduce the number of *lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech* and petition for the redress of grievances. *Id.* [Emphasis added.] *Brandom v. Coupled Products,* 975 N.E.2d 382, 385 (Ind. App. 2012).

[T]he Indiana Constitution "'more jealously protects freedom of speech guarantees than does the United States Constitution.' " *In Re Indiana Newspapers, Inc.*, 963 N.E.2d 534, 553 (Ind. App. 2012) citing *Mishler v. MAC Sys., Inc.*, 771

N.E.2d 92, 97 (Ind.Ct.App.2002) (*quoting Lach v. Lake Cnty.*, 621 N.E.2d 357, 362 n. 1 (Ind.Ct.App.1993).

As noted in *Connick v. Myers,* 461 U.S. 138, 145, 103 S.Ct. 1684, 1689 (1983), the First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people. "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government."

Consequently, the U.S. Supreme Court has frequently reaffirmed that speech on public issues occupies the "highest rung of the hierarchy of the First Amendment values," and is entitled to special protection. *City of Indianapolis v. Heath,* 686 N.E.2d 940, 942 (Ind. App.1997).

On November 8, 2012, Plaintiffs filed *Motion to Strike* (Dkt. #532) with the hope and expectation of concealing their persistent misconduct from the Court of Appeals. On December 26, 2012, the Magistrate issued *Order on Plaintiffs' Motion for Protective Order.* (Dkt. #560).

The Order provided, in pertinent part, 'These are extraordinary requests, and the plaintiffs have not made the kind of showing necessary to overcome Mr. Hartman's rights under the First Amendment. *See, e.g., Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1074-76 (1991) (gag order directed at lawyers can be constitutional where there is substantial likelihood that extrajudicial statements would materially prejudice an adjudicative proceeding, and order is narrowly drawn

and least restrictive measure available to ensure fair trial). (Dkt. #560 at 1) (Emphasis supplied)."

### (1)  Reports to law enforcement agencies are protected.

[I]t is well established that, in Indiana, communications made to law enforcement to report criminal activity are qualifiedly privileged. This so-called public interest privilege is intended to encourage private individuals to assist law enforcement with investigating and apprehending criminals.  *Kelley v. Tanoos,* 865 N.E.2d 593, 600 (Ind. 2007).

At trial, McCarthy questioned Inspector Hartman about his contacts with law enforcement agencies reporting McCarthy's criminal conduct, including the Cullman, Alabama Sheriff's Office, the Seneca County, Ohio Sheriff's Office, the Pittsburgh, Pennsylvania Police Department, the Indiana State Police, the Noble County, Indiana Sheriff's Office, and the U.S. Postal Inspection Service. (Hartman Tr. APX 672-676; APX 767-768).   McCarthy never challenged Hartman on the truthfulness of his statements, which they alleged are defamatory. See police reports, Exhibits 1043 and 1044.  (Hartman Tr. APX 672-673).

A communication is defamatory *per se* if it imputes: (1) criminal conduct; (2) a loath-some disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct. [Emphasis in original.]  *Kelley v. Tanoos*, 865 N.E.2d 593, 595 (Ind. 2007).

Whether a communication is defamatory or not is a *question of law for the court*, unless the communication is susceptible to either a defamatory or non-

defamatory interpretation — in which case the matter may be submitted to the jury. [Emphasis added.] *Rambo v. Cohen,* 587 N.E.2d 140, 145 (Ind. App.1992), *trans. denied.*

Thus, it was error for the trial court to permit McCarthy to present to the jury Fuller's complaints to law enforcement agencies and officials, which the evidence demonstrates they made in good faith, and based upon the truth of their reports.

### (2) Communications with Catholic clergy and Catholic organizations are a protected exercise of one's religion.

Fuller are lifelong Catholics with a history of service to the Church. Inspector Hartman has served as a Eucharistic Minister and also has a strong devotion to the Blessed Virgin Mary. (Hartman, Vol. 15, Tr. at 2680). Fuller, now in her 70's, has lived as a Catholic nun since the age of 17, over 25 of those years in cloisters, with virtually no contact with the outside world.

McCarthy falsely alleged that Fuller's communications with the clergy and the Knights of the Holy Sepulcher, a papal organization, were defamatory. (Hartman Tr. 651-657; APX 659-669; Exhibits 74, 1, 123, 1199, 442, 4, 2, 3).

To prevent his testimony, McCarthy harped on the red herring that Hartman lacked "personal knowledge" of their criminal and immoral conduct, that is to say he did not personally witness the criminal acts. (That never has been a bar. Police do not always witness the crime. That's why they investigate it.) Hartman truthfully responded, "I have personal knowledge of the documents," which clearly demonstrated the truthfulness of the allegedly defamatory statements. (Hartman

Tr. APX 652-655; APX 661-662).   McCarthy never challenged Hartman on the truthfulness of his statements.

Fuller had a *moral* duty to report McCarthy's unlawful and unconscionable conduct to Catholic clergy, who defend the faith of the Church. They were morally compelled to report McCarthy's thefts from and adulteration of the OLA Devotion, including the messages in the Diary©.

The Knights of the Holy Sepulcher are organized to support the mission of the Catholic Church and are administratively responsible to the Holy See, with a *duty* to protect and defend the faith, with integrity. Similarly, Fuller had a *social* and *civic* duty to report McCarthy's *misconduct* to the Office of Disciplinary Counsel, Supreme Court, which is charged with the duty to police attorneys registered in the State of Indiana.

Fuller made their reports in good faith, supported by documentary evidence and sworn testimony.  (Hartman Tr. APX 669; Vol. 25, Tr. at 5039).

> A qualified privilege "applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he had a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009) (citation omitted).  *Accord, Brown v. Indianapolis Housing Authority,* Case No. 49A05-1111-CT-648 (IN Ct. App., Jul. 24, 2012).

As a matter of law, the trial court erred by permitting McCarthy to introduce evidence of reports to Catholic clergy, the Knights of the Holy Sepulcher, and the Indiana Supreme Court, because they were privileged communications.  *Williams v. Tharp, Supra.*

### (3) <u>Inspector Hartman's blog postings are protected speech.</u>

McCarthy Langsenkamp and Kevin McCarthy attempted to deny Hartman's blog revelations pertaining to their misconduct. (McCarthy Tr.851-864; Langsenkamp Tr. APX 784-827). McCarthy repeatedly characterized the blog post as "derogatory." (McCarthy Tr. APX 851, 853-856, 864).

Hartman offered testimony, defending the truthfulness of his posts, all of which he supported with documentary evidence and sworn testimony. (Hartman Tr. APX 669, 706-726; Vol. 25, Tr. at 5038-5054; Exhibits 4105, 4106, 4112, 171, 172. 303, 151, 153, 159, 4048, 4555, 4557, 4558, 4204 w/charts, 311, 166 ).

> From the beginning, this Court has recognized truth as a complete defense in civil actions for libel or slander. Dissemination of truthful but defamatory private facts has apparently never been civilly actionable as libel or slander in Indiana. *Doe v. Methodist Hospital*, 690 N.E.2d 681, 687 (Ind. 1997) (Internal citations omitted).

Hartman's blog addressed both crime and the corruption affecting members of the Catholic Church, as well as matters of general public interest to other Catholics. Public allegations that someone is involved in crime generally are speech on a matter of public concern. *See, e.g.*, *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1298 (11th Cir. 2008) (noting that accusations of "alleged violations of federal gun laws" by gun stores were speech on "a matter of public concern"); *Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003) (holding that allegations of "fraud in the art market" involve "a matter of public concern"), *Obsidian Finance Group LLC v. Cox,* __F.3d___ (Nos. 12-35238, 12-35319, 9th Cir. Jan. 17, 2014)(blogger's speech related to matters of public concern – crimes – corruption). Therefore, reports that

McCarthy were engaged in criminal conduct was protected speech because it concerned matters of public concern.

[C]ourts have broadly construed "public interest" to include not only governmental matters, but also *private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity*. Indeed, even before the Legislature mandated broad construction, the court in *Church of Scientology v. Wollersheim*, 42 Cal.App.4th 628, 49 Cal.Rptr.2d 620 (1996), [review denied ] opined that "[a]lthough matters of public interest include legislative and governmental activities, *they may also include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals.*" (Id. at p. 650, 49 Cal.Rptr.2d 620). And in *Nygard*, *supra*, 159 Cal.App.4th at page 1042, 72 Cal.Rptr.3d 210, the court observed that the legislative history and the cases that precipitated the law "suggest that 'an issue of public interest' … is any issue in which the public is interested. In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest." [Emphasis added.] *Brandom v. Coupled Products, LLC*, 975 N.E.2d 382, 386-387 (Ind.App. 2012). Therefore, McCarthy's claims of defamation should have been summarily dismissed, rather than submitted to the jury.

## B. The injunction goes beyond and contradicts the specific verdicts, unlawfully prohibiting Fuller from publishing the verdicts in Patricia Fuller's favor

On March 11, 2014, the jury returned its non-specific verdicts, finding Hartman liable to Langsenkamp and McCarthy for defamation *per se* and *per quod,* generally, without any specifics. (Dkt. 826, Page ID 17743-17746). The evidence fails to support that verdict. Nevertheless, to give McCarthy what they wanted, the lower court attempted to rewrite history in its post-trial rulings, reaching well beyond the limited verdicts.

Following trial, without even the pretense of support, the judge ruled, "the Court finds that there is ample evidence in the record to support both McCarthy's and Langsenkamp's defamation claims against Hartman." (Dkt. 828, Page ID 17802-17803). Notably, the judge did not cite one shred of such "evidence."

Well prior to trial, Fuller had furnished the judge with a complete set of proposed trial exhibits and had fully briefed the trial court, with precise citations to the record and exhibits. Assuming the trial court exercised due diligence, the trial court should have been well aware that Hartman's blog posts were consistently truthful and fully supported by documentary evidence and sworn testimony. *See* Dkt. 526, Page ID 10658-10669; Dkt. 843-1, Page ID 18791-18800; Dkt. 649; Dkt. 844-1, Page ID 18952-18983; Dkt. 851, Page ID 19151-19173; Dkt. 861, Page ID 21207-21226.

Inexplicably, the judge turned a blind eye to the evidence refuting and disproving MCarthy's' claims of defamation.

> Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not

26

supported by clear and convincing proof of "actual malice." *Journal-Gazette v. Bandido's, Inc.,* 712 N.E.2d 446, 455 (Ind. 1999).

The lower court abdicated that duty. Instead, the judge figuratively stepped down from the bench and became another advocate for McCarthy, expressly refusing to even read and consider Fuller's well-researched brief. *See Motion to Disqualify the District Court.* The judge issued an unconstitutional permanent injunction, violating Patricia Fuller and Inspector Hartman's First Amendment rights to freedom of speech and the free exercise of their religion. Time and time again, he made the court nothing more than a rubber stamp, granting word for word whatever McCarthy told him to do.

In rubber-stamping, without scrutiny, McCarthy's requested injunction, and ignoring Fuller's brief in opposition (which was not oversized under the rules), the injunction goes so far as to forbid Patricia Fuller and Inspector Hartman from making statements about *the verdicts in her favor.* For example, they are forbidden to disclose that the jury returned verdicts that Kevin McCarthy, Albert Langsenkamp, and Larry Young defamed her, yet the jury did. (Verdict Forms.) They are enjoined from making statements that the jury returned a verdict finding that Kevin McCarthy unlawfully converted some of Patricia Fuller's money. But the jury did.

At times, the lower court actually searched and strained for reasons to strike or disregard Fuller's briefs. In some orders, he spent more time

complaining about a footnote or other trivial matter than focusing on the serious, substantive issues before him.

In one instance, even though the court's own docket proved that Fuller had filed their brief on the due date, the judge refused to consider it, insisting that it was filed a few minutes after midnight.  Not only did the court's own electronic time stamp on every page of the document prove that it was timely filed, but the court's own docket sheet shows the brief filed on that date.

Nevertheless, the lower court irrationally continued to insist that it was filed the next day and for that reason he was not going to consider it.  On multiple occasions, the lower court also applied an erroneous interpretation of the law and the Southern District of Indiana Local Rules.  He persisted in ruling that, if a party fails to file a brief, or if a brief is stricken, the court would automatically grant the moving party's motion, in every respect.

Fuller argued in vain that, even in the absence of a brief in opposition, the court still has a responsibility to scrutinize a motion and apply the correct law to the facts.  The absence of an opposition does not justify converting the court into a rubber stamp.  The proper procedure is for the court to scrutinize (even more carefully) the filing and render a decision in accord with the law. A court's duty to do so is ever present, not merely when the court has the benefit of an opposition brief to assist its analysis. *Motion to Disqualify the Trial Court.*

Repeatedly, the judge showed that he did not want to be bothered with being informed about the applicable law. How else can one explain a trial judge not allowing a party to offer jury instructions, claiming that right was waived, as early as 19 months *prior to trial.*

To compound the unjust ruling concerning the jury instructions, the lower court, at trial, committed reversible error by not allowing Fuller's counsel to place their objections to the jury instructions on the record. *See* Vol. 29, Tr. at 5731-5742, and Vol. 27, Tr. at 5361.

### C. The bad faith and unclean hands of McCarthy preclude them from receiving any form of equitable relief.

McCarthy filed their *Amended Complaint* (Dkt. 26) in bad faith, alleging defamation by Patricia Fuller and Inspector Hartman. Their own Exhibit K to Dkt. 26 includes a sampling of posts from Hartman's blog, many of which cited to and contained supporting documentary evidence. (Dkt. 26-11, pages 19-23; Dkt. 26-12, pages 2-23; Dkt. 26-13, pages 2-12, 15-24; Dkt. 26-14, pages 7-17). *See* Dkt. 897, at 15-16. Thus, from the inception of their case, McCarthy knew and possessed the evidentiary support for Hartman's truthful statements.[3]

As early as May 30, 2012, Fuller alerted the judge of McCarthy's deliberate misconduct in the prosecution of the case at bar. (Dkt. 443-1) McCarthy and their attorneys engaged in an egregious pattern of misconduct throughout this litigation. Examples include, but are not limited to, the following: manufacturing fabricated

---

[3] McCarthy demonstrated further bad faith and unclean hands in their false Answer to Fuller's Amended Counterclaims (Dkt. 65, ¶141), in relevant part, *"Responding parties also deny that Hartman's blog entries were supported by documentary evidence."* (Dkt. 125, at p. 78). Fed.R.Civ. P. 11(b)(4).

documentary "evidence;" offering perjured testimony; suborning perjury; deliberately withholding discoverable evidence; deliberately violating express orders of the trial court, excluding and attempting to exclude counsel for Fuller from at least six depositions, and hiring goons to threaten and assault witnesses, among others. Fuller extensively briefed McCarthy's misconduct, with citations to the record, all of which the trial court ignored. Dkt. 443-1; Dkt. 526; 836, Page ID 18652-18676; Dkt. 838, Page ID 18690-18691, 18700-18706; Dkt. 843-1 through 843-6; Dkt. 844-1, Page ID 18952-18986; Dkt. 848; 849-1, Page ID 19080-19099; Dkt. 849-4; 851-1, Page ID 19176; Doc, 852-10; Dkt. 855, Page ID 21135-21169; 861, Page ID 21232-21235; Dkt. 877, Page ID 24147-24150). *See also* Dkt. 14-3308-33-1, at pp. 7-10.

Hartman testified at trial that McCarthy withheld discoverable evidence pertaining to McCarthy' "most generous gift" to then-Archbishop Burke. An informant had advised that McCarthy and Langsenkamp had paid $500,000 to Archbishop Burke. In addition, a knowingly false letter that Archbishop Burke issued to the Conference of Catholic Bishops (for the benefit of Langsenkamp and McCarthy,) in that same time frame, lends credence to the tip, as did the thank you letter from Archbishop Burke concerning their "most generous gift." The motion for attorneys' fees by Ice Miller attorney, Michael Lewinski, includes an itemization, which reveals additional communications with Archbishop Burke wrongly withheld from Fuller in discovery. McCarthy withheld evidence of their payments to bishops in order to deprive Hartman of evidence supporting his defense. (Hartman Tr. APX

752).  *See* Trial Exhibits 171,172.  *See also* Dkt. 526, Page ID 10659; Dkt. 843-1, Page ID 18849-18853; Langsenkamp Deposition Tr. APX 775-781; McCarthy Deposition Tr. APX 836-843.

BVM Foundation President Daniel Tekulve expressly admitted on cross-examination at trial that he did not conduct a complete, thorough, diligent search of the business records of the BVM Foundation, pursuant to Fuller's discovery request, and that he did not even look in the file cabinets that contain BVM's responsive records.  Thus, he confessed to disobeying the court's orders to BVM to comply with the discovery demands. Yet, BVM's attorneys' falsely certified that BVM's discovery production was "complete." (Tekulve, APX 892-898).  *See* Dkt. 843-1, Page ID 18812-18815.

McCarthy suborned perjury when they presented the trial testimony of Duncan Bonnell (via his videotaped deposition.) (Bonnell, Vol. 15, Tr. at 2749). McCarthy's lead attorney, Michael Lewinski, in an affidavit written for Bonnel before anyone had ever interviewed him to ascertain what he knew, had scripted Bonnell's testimony. Douglas Mercer, a private investigator employed by McCarthy, delivered the script to Bonnell. (Bonnell, Tr. APX 627-628).[4] Mercer is with the same firm of investigators who stalked witnesses, including but not limited to Marie Sanderson and Denise Parlacoski, even assaulting the latter.  Emails from Kevin McCarthy, prior to the assault, stress the need to "take care of Parlacoski."

---

[4] Bonnell testified that Mercer presented him with his affidavit at their initial meeting that he characterized as "ready to roll," without having first elicited any information whatsoever concerning this case from him. (Bonnell Tr. APX 628). *See* Dkts. 843-1, Page ID 18876-18881; 581-2, Page ID 11547-11551, 11554-11559.

"Because corrupt intent knows no stylistic boundaries, fraud on the court can take many forms." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989). "Trying improperly to influence a witness is fraud on the court and on the opposing part . . . ." *Ty Inc. v. Softbelly's, Inc.* (*Ty II*), 517 F.3d 494, 498 (7th Cir. 2008). The trial court failed to address and reign in McCarthy's misconduct and unclean hands at any time, which persisted throughout the entirety of these proceedings and even into this appeal. (E.g., their interference with Fuller's contracts with the court reporter for trial transcripts.  Even a cursory glance reveals that McCarthy's lawyers induced and wrote the court reporter's affidavit, filed in these appeals, falsely alleging dates of production and payments (bringing disgrace to her personally and to the S.D.Ind. district court.)

Again attempting to rewrite history, the lower court ruled, contrary to the record:

> The Defendants point to no specific ground for an award pursuant to Rule 37 and provide only a list of twenty acts of alleged misconduct, *without any citation to the record* . . . . It should go without saying a court could not issue sanctions against attorneys totaling over $7,000,000 based upon nothing more than a list of general grievances regarding how opposing counsel litigated a case.  [Emphasis added.] (Dkt. 854, Page ID 21105-21106).

The record refutes that Fuller ever sought a sanction of $7 Million; the record also refutes the contention that Fuller failed to cite to the record. In truth, Fuller's brief (Dkt. 843-1) contained *no fewer than 323 citations to the record.  See* Dkt. 861-17.

Despite the lower court's efforts to rewrite history, the record repeatedly documents the fact that Fuller briefed the lower court concerning McCarthy's bad faith and unclean hands with precise citations to the record throughout the proceedings below, including with trial testimony. *See* Hartman Tr. APX 747 (McCarthy' counsel lied to the trial court). *See also* Dkt. 877, Page ID 24150-24154.

On the first day of trial, McCarthy' counsel shrugged off Fuller's motion for separation of witnesses, as if none of their witnesses were present in the courtroom, when they well knew that Patrice McCarthy, Kevin McCarthy's wife and a witness in the case, was present in the courtroom and listened to McCarthy's testimony. (APX 882). On the second day of trial, Fuller's counsel again moved for separation of witnesses, whereupon McCarthy's counsel acknowledged the presence of Patrice McCarthy, a witness in the case, in the gallery. (APX 883-884).

At trial, McCarthy's counsel lied to the trial court to prevent admission of Fuller's Trial Exhibit 4769, Alltel telephone records of Fuller for the time period January 2004 through November 2005, documenting one and only one telephone call from her to McCarthy, during the covered period, on November 28, 2005. By proving that Fuller made only one call to Kevin McCarthy during that extended time frame, Trial Exhibit 4769 refuted McCarthy's false trial testimony claiming that Sister Therese called him numerous times, badgering him to participate in the Devotion. He stated, "in the summer of 2005 when [Sister Therese] called and really leaned on me and tried to get me involved in [the Devotion]." (McCarthy Tr.

APX 850). He was covering up that he and Langsenkamp had targeted her and descended upon her, uninvited and unannounced.

McCarthy had subpoenaed those records and provided them to Fuller in discovery. (Hartman Tr. APX 733-735). In conference with the judge, however, McCarthy *denied* that they had received the telephone records, depicted in Fuller' Trial Exhibit 4769, and thereby successfully prevented the trial exhibit from being published to the jury. (APX 885-891). They pretended not to know the source of the documents, when they, themselves, were the source, having subpoenaed the documents.

Even the biased Magistrate was forced to acknowledge some of McCarthy's misconduct:

> Some of the plaintiffs' behavior in the setting and taking of depositions may not be exemplary. For example, *see* defendants' motion for protective order, Dkt. 196, and defendants' status report regarding plaintiff Langsenkamp's deposition, Dkt. 222 at p. 4 n.1. **Moreover, Fuller's belief that the plaintiffs' prodigious filing of motions is in part a strategy to overwhelm and misdirect the defendants' time and resources has some basis in the record, in this judge's view. (Dkt. #562, at 1, n.1).**

Fed.R.Civ.P. 1, provides that the rules should be interpreted to do justice. Mr. Justice Brandeis noted that "a court will not redress a wrong when he who invokes its aid has unclean hands," *id.*, at 483, 48 S.Ct., at 574 *Citing to Olmstead v. United States*, 277 U.S. 438, 471-485, 48 S.Ct. 564, 570-575, (1928). *United States v. Payner*, 447 U.S. 727, 745 (1980).

> The "unclean hands" doctrine "closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of

the defendant." *ABF Freight System, Inc. v. N.L.R.B.,* 510 U.S. 317, 329-30 (1994).

"*Almost any kind of conduct the [court] may consider to be unethical or improper might suffice to bar the plaintiff's claim, even if the conduct is not actually illegal.*" 1 Dan B. Dobbs Law of Remedies 2.4(2) (2d ed.1993). [Emphasis added.] *Wedgewood Community Association, Inc. v. Nash*, 810 N.E.2d 346, 347-348 (Ind., 2004).

Perjury is defined as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan,* 507 U.S. 87, 94 (1993). Perjury committed in the course of legal proceeding is a fraud on the court. *Allen v. Chicago Transit Authority,* 317 F.3d 696, 701 (7th Cir. 2003).

Rule 60 (b)(3) authorizes the district court to set aside a judgment on the basis of fraud or other misconduct by a party. *Ty, Inc. v. Softbelly's, Inc.,* 353 F.3d 528, 536 (7th Cir. 2003). Prior to the time Fuller moved to disqualify the district court, the judge held:

> … the fact that the Defendants emailed their three trial exhibits to Plaintiffs' counsel on Monday rather than on Friday could not conceivably have "hindered the administration of justice" in any way. *Nor would it have increased the Plaintiffs' costs, but for the Plaintiffs' choice to file a Notice to point it out.* Missed deadlines are unfortunate, but so is *exaggerating the import of a missed deadline and (predictably) generating a flurry of filings as a result.* The Plaintiffs' request for sanctions is DENIED. (Dkt.627 at 3.)

[T]he equitable maxim [is] that 'he who comes into equity must come with clean hands.' This maxim is far more than a mere banality. *It is a self-imposed*

ordinance *that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.* That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be 'the abetter of iniquity.' *Bein v. Heath*, 6 How. 228, 247, 12 L.Ed. 416.

Thus while 'equity does not demand that its suitors shall have led blameless lives,' *Loughran v. Loughran*, 292 U.S. 216, 229, 54 S.Ct. 684, 689, 78 L.Ed. 1219, as to other matters, *it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue. Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293; *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387, 64 S.Ct. 622, 624, 88 L.Ed. 814; 2 Pomeroy, *Equity Jurisprudence* (5th Ed.) §§ 397-399. [Emphasis added.] *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814-815 (1945).

> The meaning and proper application of the maxim are to be considered. As authoritatively expounded, *the words and the reasons upon which it rests extend to the party seeking relief in equity.*

> 'It is one of the fundamental principles upon which equity jurisprudence is founded, that before a complainant can have a standing in court he must first show that not only has he a good and meritorious cause of action, *but he must come into court with clean hands. He must be frank and fair with the court,….*' Story's *Equity Jurisprudence* (14th Ed.) § 98.

> *The governing principle is 'that whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to*

*acknowledge his right, or to award him any remedy.*' Pomeroy, *Equity Jurisprudence* (4th Ed.) § 397.

This court has declared: '*It is a principle in chancery, that he who asks relief must have acted in good faith. The equitable powers of this court can never be exerted on behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abetter of iniquity.*' *Bein v. Heath*, 6 How. 228, 247, 12 L.Ed. 416.

And again: '*A court of equity acts only when and as conscience commands; and, if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses, and whatever use he may make of them in a court of law, he will be held remediless in a court of equity.*' *Deweese v. Reinhard*, 165 U.S. 386, 390, 17 S.Ct. 340, 341, 41 L.Ed. 757. [Emphasis added.]

*Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 244-245 (1933).

The courts of the State of Indiana have decided cases on the issue of *unclean hands* in accord with the holdings of the United States Supreme Court.

For the regulation and government of judicial action, courts of equity have formulated certain rules or principles, which are described by the term "maxims." There are a number of equitable maxims that involve the question of whether the conduct of a party seeking equitable relief entitles the party to the court's assistance. "*Where it appears that the litigant has not acted in accordance with these maxims, as a general rule relief will be denied.*" 27A Am.Jur.2d Equity 119 (1996). *One such maxim is that "he who seeks equity must come into court with clean hands." This maxim "closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.*" ABF Freight Sys., Inc. v. N.L.R.B., 510 U.S. 317, 330, 114 S.Ct. 835, 127 L.Ed.2d 152 (1994) (Scalia, J., concurring) (quotation omitted). As one treatise has observed, "*Almost any kind of conduct the [court] may consider to be unethical or improper might suffice to bar the plaintiff's claim, even if the conduct is not actually illegal.*" 1 Dan B. Dobbs Law of Remedies 2.4(2) (2d ed.1993). [Emphasis added.] *Wedgewood Community Association, Inc. v. Nash*, 810 N.E.2d 346, 347-348 (Ind., 2004).

The unclean hands doctrine is an equitable tenet that demands one who seeks equitable relief to be free of wrongdoing in the matter before the court. *Stewart v. Jackson*, 635 N.E.2d 186, 189 (Ind.Ct.App.1994). The alleged wrongdoing must have an immediate and necessary relation to the matter being litigated. *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933); *Ruder v. Ohio Valley Wholesale, Inc.*, 736 N.E.2d 776, 780 (Ind. App., 2000). *Accord Coppolillo v. Cort*, 947 N.E.2d 994 (Ind. App., 2011).

The purpose of the unclean hands doctrine is so that a party does not reap the benefit from his misconduct. Henry McClintock, *Handbook of Equity,* 35 (1936). *Id.,* at 781. Any willful act concerning the cause of action that rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim. *Precision Instrument*, 324 U.S. 815.

> We have thus held that the ADEA's remedial scheme does not preclude application of the common law rule that a prevailing defendant may obtain attorneys' fees if the plaintiff litigated in bad faith. *EEOC v. O & G Spring & Wire Forms Specialty Co.,* 38 F.3d 872, 883 (7th Cir.1994). This exception to the typical "American rule," under which each party bears his own litigation expenses, applies where "a party has `acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258-59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)); *see also Stive v. United States,* 366 F.3d 520, 521 (7th Cir.2004).
>
> Exactly what constitutes bad faith has been the subject of some uncertainty. Courts have used phrases such as harassment, unnecessary delay, needless increase in the cost of litigation, willful disobedience, and recklessly making a frivolous claim. *See Stive,* 366 F.3d at 521-22 (collecting and discussing cases). We have also noted, when analyzing the meaning of "unreasonably and vexatiously" in the similar context of 28 U.S.C. § 1927, that the term "bad faith" has both

a subjective and objective meaning, and we often treat reckless and intentional conduct equally. *See Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184-85 (7th Cir.1992); *In re TCI, Ltd.,* 769 F.2d 441, 445 (7th Cir.1985). Furthermore, bad faith may occur beyond the filing of the case and "`may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.'" *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (quoting *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973)). [Emphasis added.]

(*Mach v. Will County Sheriff,* 580 F.3d 495, 501 (7th Cir. 2009).

## 2. The district court erred in awarding hundreds of thousands of dollars to McCarthy, in compensatory and punitive damages for alleged defamation.

### A. McCarthy failed to present evidence showing they suffered any actual damages.

McCarthy failed to provide any notice and evidence of damages in discovery. Fed.R.Civ.P. 26(a)(1)(A)(iii). Langsenkamp conceded in very evasive testimony that he had not produced any notice or evidence of damages to Fuller. (Langsenkamp Tr. APX 830-831). Nevertheless, McCarthy and Langsenkamp testified at trial, for the first time, of alleged, yet unsupported damages. (McCarthy Tr. APX 865-879; Langsenkamp Tr. 827-830). *E.g.,* Langsenkamp testified that he "lost" a bid with the U.S. Mint, citing an imaginary FBI background investigation, supposedly incorporating revelations made by Hartman pertaining to Langsenkamp's unlawful conduct. Suddenly, he claimed he suffered a personal loss of $20 million.[5]

---

[5] The record does not support Langsenkamp's contention that he lost a contract because of anything Hartman said or did. (Langsenkamp Tr. APX 829). Hartman never contacted the FBI pertaining to this case. (Hartman Tr. APX 672-676; APX 767-768). The jury's erroneous award of $1 million in punitive damages likely resulted from Langsenkamp's unsupported testimony, never disclosed in discovery and first raised at trial. (Dkt. 826, Page ID 17746).

39

### B. There was no evidence that Patricia Fuller or Inspector Hartman published any statement with malice.

McCarthy examined and cross-examined Hartman extensively at trial. (Hartman Tr. APX 643-657; Tr. APX 658-705, 730-732; APX 740-768; APX 769-774). At no time, and in no way, did they prove, or even attempt to prove, that Hartman published any allegedly defamatory statements with malice. That is to say, McCarthy failed to prove by clear and convincing evidence, or otherwise, that any statement(s) Hartman published "*was published with knowledge of its falsity or with reckless disregard of whether it was false.*" *AAFCO Heating & Air Con., Co. v. Northwest Pub., Inc.*, 321 N.E.2d 580, 586 (Ind.Ct.App. 1974).

> The offensiveness of the statements cannot be determined by how a plaintiff views the statement. *In Re Indiana Newspapers, Inc.*, 963 N.E.2d 534, 550 (Ind. App. 2012) (citations omitted).

> [T]he Indiana Constitution "'more jealously protects freedom of speech guarantees than does the United States Constitution.'" *In Re Indiana Newspapers, Inc.*, 963 N.E.2d 534,553 (Ind. App. 2012) *citing Mishler v. MAC Sys., Inc.*, 771 N.E.2d 92, 97 (Ind.Ct.App.2002) (*quoting Lach v. Lake Cnty.*, 621 N.E.2d 357, 362 n. 1 (Ind.Ct.App.1993).

> *To maintain an action for either per se or per quod defamation the plaintiff must demonstrate (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages.* Kelley v. Tanoos, 865 N.E.2d 593, 596-97 (Ind. 2007), *citing Schrader v. Eli Lilly and Co.,* 639 N.E.2d 258, 261 (Ind.1994).

The courts of Indiana have adopted an "actual malice" standard in defamation for both private and public plaintiffs in those matters of public concern. *Journal–Gazette Co., Inc. v. Bandido's, Inc.,* 712 N.E.2d 446, 452 (Ind.1999).

> We adopt a standard that requires the private individual who brings a libel action involving an event of general or public interest to prove that the defamatory falsehood was published with knowledge of its

falsity or with reckless disregard of whether it was false. *AAFCO Heating & Air Con., Co. v. Northwest Pub.*, Inc., 321 N.E.2d 580, 586 (Ind.Ct.App. 1974).

Today, we expressly adopt the Aafco approach establishing an actual malice standard in matters of public or general concern for private individual plaintiffs. *Journal-Gazette v. Bandido's, Inc.,* 712 N.E.2d 446, 452 (Ind. 1999). [W]e write to hold that the actual malice standard of proof required in defamation cases involving matters of public or general concern applies not only to public figures, but to private individuals as well. *Journal-Gazette v. Bandido's, Inc.,* 712 N.E.2d 446, 447 (Ind. 1999).

## C. The judge failed to instruct the jury concerning the malice requirement.

In Jury Instruction No. 19, the trial court expressly instructed the jury, "The Defendant in question [Hartman] knew the statement was false, or believing it to be true, *failed to use reasonable care to determine its truth*." [Emphasis added.] (Dkt. 818, Page ID 17605).

Instructing the jury to weigh the evidence whether Hartman "*failed to use reasonable care to determine [the] truth*" to determine the truthfulness of his published statements, the trial court charged the jury to apply the "negligence" standard to the evidence. "*Negligence is the failure to use the care that a reasonably prudent person would use in the same circumstances*." INSD Pattern Civil Jury Instructions, 9.01 (Revised 2009).

Indiana law, however, required the trial court to instruct the jury to weigh the evidence against the "reckless disregard" standard, a higher evidentiary threshold for McCarthy to hurdle. *AAFCO Heating & Air Con., Co. v. Northwest Pub., Inc.*, 321 N.E.2d 580, 586 (Ind.Ct.App. 1974). "*An action is in reckless disregard of*

Plaintiff's rights if taken with knowledge that it may violate the law." INSD

Pattern Civil Jury Instructions, 3.13 (Revised 2009).

The trial court erred by instructing the jury to weigh the evidence against the

"negligence" standard rather than the "reckless disregard" standard, as required by

the laws of the State of Indiana, thus exposing Hartman to a lesser standard of

proof and depriving him of a fair trial.[6] See Dkt. 861, Page ID 21232.

See Docs. 844-1, Page ID 18986-18988; 849-1, Page ID 19092-19093.

### D. The trial court deprived Hartman from testifying concerning the financial impact of the lawsuit on him and his family.

The trial court prevented Inspector Hartman from testifying as to his limited

personal financial position when it sustained a series of objections raised by

McCarthy to a series of questions from his counsel intended to elicit that relevant

information from Hartman for consideration by the jury. McCarthy raised a series

of objections that Hartman "has no claims," to bar answers from Hartman

pertaining to his limited financial resources, which the trial court sustained despite

the fact that there are no viable grounds or legal theories to raise and sustain those

objections. (Hartman, Vol. 25, Tr. at 5136- 5139).

Fuller raised this issue in their Rule 59(e) motion with citations to controlling

legal authority. (Dkt. 838, Page ID 18696-18700). The trial court, defending its

erroneous denial of Hartman's testimony, thus prejudicing him, ruled, "The fact

---

[6] Further proof of McCarthy's bad faith is shown by the fact that, despite having received full discovery from Fuller *refuting* their bad faith claims of defamation, they continued to pursue their claims of defamation. In their post-trial motions, however, McCarthy argued the controlling law of defamation, demonstrating their knowledge and willful pursuit of their bad faith claims of defamation. (Dkt. 841, Page ID 18732).

that Inspector Hartman did not offer evidence of his financial situation falls squarely on his counsel's shoulders," citing to Trial Transcript at 2660. (Dkt. 854, Page ID 21111-21112).[7] The record refutes the judge's assessment. Hartman's counsel repeatedly attempted to elicit this testimony from Hartman, but McCarthy and the judge stymied them at every turn. (Hartman Tr. APX 736-739). *Compare testimony of* McCarthy Tr. APX 851-879; Langsenkamp Tr. APX 827-830). *See also* Dkt. 855, Page ID 21166-21167.

Indiana courts have held that evidence of a defendant's wealth is relevant and admissible regarding the determination of punitive damages. *See Stroud v. Lints*, 790 N.E.2d 440, 446 (Ind.2003). Current law recognizes that punitive damages may serve the societal objective of deterring similar conduct by the defendant or others by way of example. For that reason, if punitive damages are appropriate, the wealth of the defendant has for many years been held relevant to a determination of the appropriate amount. *Id., at 445.*

> In sum, Indiana law recognizes a right to assert a claim to be compensated for a cognizable wrong and to recover on that claim to the extent the law allows. But a number of consequences flow from the fundamentally different nature of a claim for punitive damages. *The financial condition of the defendant is relevant, Hibschman Pontiac, Inc. v. Batchelor,* 266 Ind. 310, 317, 362 N.E.2d 845, 849 (1977). [Emphasis added.] *See also Cheatham v. Pohle,* 789 N.E.2d 467, 472 (Ind. 2003).

> As an historical matter, the wealth of the perpetrator has long been thought relevant. *See Browning-Ferris,* 492 U.S., at 300, 109 S.Ct., at 2933 (O'CONNOR, J., concurring in part and dissenting in part) (citing the *Magna Carta* and Blackstone's Commentaries). *TXO Production Corp. v. Allied Resources Corp.*, 509 U.S. 443, 492 (1993).

---

[7] The trial court's citation to the Trial Transcript at 2660 is confounding since the "no claims" objections cannot be found there, but rather at Vol. 25, Tr. APX 736-739.

3. It was error to grant McCarthy's Motion for *Judgment on the Pleadings* and summarily dismiss Fuller's *Counterclaims* charging McCarthy with civil RICO violations under federal and state law, where the court ignored the express pleadings in the *Amended Counterclaims* concerning the objectives of the criminal enterprise and demonstrating the continuity element.

Fuller filed their *Amended Counterclaims* (Dkt. 65) pleading 23 counterclaims. They pleaded 15 of their counterclaims (Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 18, 20) in reliance upon the federal RICO statutes (18 USC §§1961, *et seq.*) and 3 of their counterclaims (Counts 21, 22, 23) in reliance upon the Indiana Corrupt Business Influence Act (Indiana Code §35-45-6-2(a), (b), (c)).

In its *Entry on Motion for Judgment on the Pleadings* (Dkt. 382), the trial court *eviscerated* Fuller's *Amended Counterclaims* (Dkt. 65). Preliminarily, the trial court conceded, "Counterclaimants have sufficiently alleged the existence of a RICO enterprise." (Dkt. 382, Page ID 7766).

Then, in an incomprehensible ruling, the trial court *dismissed all of Fuller's RICO claims* and all claims pled in reliance upon the Indiana Corrupt Business Influence Act, on the unsupported rationale that the *Amended Counterclaims* "fails to satisfy the "continuity" requirement that is inherent in the "pattern" element of a § 1962(c) claim, citing to *Gamboa v. Velez*, 457 F.3d 703 (7th Cir. 2006). ("For this element to be satisfied, the alleged acts of wrongdoing must not only be related, but . . . must amount to or pose a threat of continued criminal activity.") (Dkt. 382, Page ID 7766).

The trial court then "found":

A fair reading of the amended counterclaim is that all of the actions
that the Enterprise is alleged to have taken were done in furtherance
of or in conjunction with the scheme to take control of the Devotion
from Fuller so that they could financially benefit from it. There is
nothing about the allegations in the amended counterclaims that
suggests that the Enterprise will move on (or would have moved on,
absent this lawsuit) to another scheme when it is finished reaping the
benefits of this one. Therefore, as in *Gamboa, the amended
counterclaims in this case "presents a distinct and non-reoccuring
scheme with a built-in termination point and provides no indication
that the perpetrators have engaged or will engage in similar
misconduct." See Gamboa*, 457 F.3d at 709. Therefore, the continuity
requirement is not satisfied in this case. [Emphasis in original.] (Dkt.
382, Page ID 7767).

The quoted paragraphs do contain allegations that the Counterclaim
Defendants' wrongdoing is continuing in that content remains on their
website that infringes Fuller's copyrights and trademarks. However,
the paragraphs in question suggest only that the Enterprise copied
Fuller's website and used her website content to create their own
website. The act of infringement, therefore, was the copying of the
website; the fact that the copied information remains available on the
internet may be relevant to the calculation of damages in an action for
copyright infringement, but *it does not mean that the Enterprise has
continued to engage in additional acts of criminal copyright
infringement, nor does it mean that there is a threat that they will
commit additional criminal acts in the future.* (Dkt. 382, Page ID
7768).

The trial court's unsupported "finding" raises serious questions as to whether

the trial court actually read the *Amended Counterclaims* at all and, if so,

certainly not fairly.

In the *Amended Counterclaims* (Dkt. 65) Fuller pleaded, at a plethora of

locations within the pleading, that McCarthy and the Enterprise were, and

are, engaged and engaging in an ongoing course of criminal conduct. (Dkt.

65, ¶¶ 2, 46, 72, 73, 78, 80, 82, 83, 84, 85, 88, 90, 95, 96, 100, 118, 119, 123,

124, 125, 147, 158, 161, 163, 164, 170, 172, 173, 179, 181, 182, 233, 244, 252,

45

253, 255, 271, 275).  It is simply not possible for a reasonable, neutral, and detached judicial officer, upon a *fair* reading of the *Amended Counterclaims,* to conclude that Appellants failed to plead "continuity."   *See* Dkt. 14-3308-33-1, pp. 21-22.

The trial court, by erroneously dismissing Appellants' RICO claims and claims brought under the Indiana Corrupt Business Influence Act, has deprived Fuller of their constitutionally protected Due Process and Seventh Amendment rights to a meaningful trial on their counterclaims.  Moreover, the trial court has deprived Fuller of their right to a fair trial in that McCarthy have based their claims of defamation, in part, upon Hartman's truthful revelations that McCarthy engaged in certain criminal conduct, the underlying predicate RICO offenses.

> "The fundamental requisite of due process of law is the opportunity to be heard." The hearing must be "at a meaningful time and in a meaningful manner." *Goldberg v. Kelly,* 397 U.S. 254, 267 (1970) (citations omitted).

*Accord, Bettendorf v. St. Croix County,* 631 F.3d 421, 247 (7th Cir, 2011). "As this Court has noted, due process is 'flexible, requiring different procedural protections depending upon the situation at hand.'" *Id.,* citations omitted.

> Quoting Justice Oliver Wendell Holmes, "(w)hatever disagreement there may be as to the scope of the phrase 'due process of law,' there can be no doubt that it embraces the fundamental conception of a fair trial . . . . *Fay v. Noia,* 372 U.S. 391,411 (1963) (citation omitted).

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth

Amendment, the Constitution guarantees . . . defendants 'a meaningful opportunity to present a complete defense.' " *Holmes v. South Carolina,* 547 U.S. 319, 324 (2006) (citations omitted).

> "The Court held that th[e] limit on the defendant's testimony violated his right "to present a complete defense." *Harris v. Thompson*, 698 F.3d 609, 633-634 (7th Cir. 2012) (citation omitted).

*See also Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (citation omitted).

4. **The district court erred by holding that the magistrate's lack of jurisdiction was waived, where she denied and dismissed Fuller's unopposed Motion for Partial Summary Judgment, with no consideration of the merits, thereby prejudicing them before and during the trial, allowing McCarthy to proceed on frivolous claims, prolonging litigation, increasing costs, and ultimately confusing the jury.**

    [The page limitation prevents more detailed discussion of this issue.]

5. **The district court erred by summarily dismissing, *sua sponte,* Patricia Fuller's unjust enrichment claim, *after* the case was submitted to the jury, without notice and briefing, in violation of Fuller's rights under the Fifth, Seventh, and Nineteenth Amendments to the United States Constitution.**

    [The page limitation prevents more detailed discussion of this issue.]

6. **The district judge violated Indiana's "AntiSLAPP statutes," mandating an award of attorney's fees, when it entered its March 20, 2015 *Marginal Order,* containing no findings or stated grounds (Dkt. 976) for denying "Inspector Paul M. Hartman's Motion for Attorney's Fees and Costs, Pursuant to Indiana Code Section 34-7-7-7" (Dkt. 897 and 952).**

    [The page limitation prevents more detailed discussion of this issue.]

7. **Fuller's *Motion to Disqualify* (Dkt. 889, 890) should have been granted, where they presented compelling evidence of pervasive judicial bias by the district judge and the magistrate, before, during, and after trial, including, but not limited to repeated violations of their Due Process rights, and the absence of neutrality**

**and impartiality by the court, which became another advocate for McCarthy, making rulings that prevented Fuller from presenting their defenses and advancing their own claims.**

The trial court deprived Hartman of his right to testify in his own defense. Information he posted at his blog derived directly from his investigation of the conduct of McCarthy. The trial court barred Hartman from testifying as to his investigation and any results arising therefrom, effectively denying him a defense to McCarthy' bad faith claims of defamation.

> McCarthy repackaged their *Motions in limine* and filed *Motion in limine to Exclude Defendant Hartman From Testifying Regarding His Investigation* (Dkt. 654), quoting, without citation, to Trial Exhibit 4089, an Investigative Memorandum, the work product of Hartman. Fuller opposed (Dkt. 672), but the court ruled on Dkt. 654, GRANTING McCarthy' motion to exclude Hartman's testimony (Dkt. 677). Hartman "must limit his testimony to facts about which he has personal knowledge, not information that he learned as an investigator."

8. **It was error for the court to award hundreds of thousands of dollars in attorneys' fees and costs to McCarthy, when they previously deducted those fees and costs from their income taxes as charitable contributions, and where:**

   A. **The court, on its own, arbitrarily calculated the fees, because the attorneys failed to maintain proper documentation,**

   B. **The court failed to utilize the Lodestar or any other accepted method for determining reasonable fees,**

   C. **The court failed to scrutinize the alleged costs in any manner, and**

   D. **The court ignored McCarthy's bad faith and unclean hands, which bar them from receiving any award.**

[The page limitation prevents more detailed discussion of this issue.]

9. Whether it constituted reversible retaliation when the district judge ordered Attorney Cramer to pay opposing counsel $6,700 and the court $150 as a "sanction":

    A. Where the district judge expressly found that she did not act willfully or with bad intent,

    B. Where the judge arbitrarily computed the amount of the sanctions and ignored the fact that the attorneys were already paid for their time,

    C. Where the penalties were imposed on grounds that no party had raised,

    D. Where the judge did not impose the penalties during trial or after trial,

    E. Where the judge did not impose the penalties in the March 19, 2014 Judgment,

    F. Where the judge did not impose the penalties in the September 18, 2014 Amended Judgment,

    G. Where the judge imposed the sanctions only *after* Attorney Cramer filed a Motion to Disqualify the district judge and magistrate, and

    H. Where the judge ignored the more serious and egregious misconduct, bad faith and unclean hands of the attorneys for McCarthy

The trial court's sanction of Appellants' counsel is nothing short of retaliatory abuse of discretion. The trial court's post-trial rulings have obviously become increasingly hostile and vituperative, a continuation of the pervasive bias that permeated the proceedings below.

On October 17, Appellants filed *Notice of Appeal* in the case at bar. (Dkt. 862).
On November 3, 2014, Appellants filed their *Statement of Issues on Appeal,*
identifying one of the issues Appellants intended to appeal "the pervasive judicial
bias by the district judge and the magistrate judge." (Dkt. 871-2, Page ID 23771).

On or about November 1, and again on December 4, 2014, Hartman brought
certain confidential matters to the attention to the Court's Judicial Counsel, a fact
of which the trial court is fully aware. (Matter No. 07-14-90098).

On January 20, 2015, Appellants filed *Motion to Disqualify the Trial Court and
Magistrate.* (Dkt. 889). Appellants grounded the motion to disqualify the trial
court and the magistrate upon the pervasive bias against defendants that
permeated the proceedings below, cited with specificity in Fuller's *Brief in Support
of Motion to Disqualify.* (Dkt. 890).

The trial court's increasing animus, hostility, and bias toward Fuller and their
counsel is demonstrated by the very content of the court's *Entry on Motion for
Attorney's Fees.* (Dkt. 977). The trial obviously expended countless hours rifling
through the pages of nearly 1,000 docket entries with the intent to find fault
wherever possible with Fuller's counsel, setting forth a number of Fuller's filings
that were filed "late," often by only *minutes* past the midnight hour and where no
prejudice resulted. (Dkt. 977, Page ID 30121-30122).[8]

---

[8] Justice (and the taxpayers) would have been better served had the trial court expended
the time and effort to *read* and *fairly* consider Fuller' post-trial motions (which he refused
to do) rather than search the nearly 1,000 docket entries with the intent to "get" Fuller'
counsel.

The trial court's prior ruling on one of the many of McCarthy' frivolous motions is interesting for its contrast.

> [T]he fact that the Defendants emailed their three trial exhibits to Plaintiffs' counsel on Monday rather than on Friday could not conceivably have "hindered the administration of justice" in any way. *Nor would it have increased the Plaintiffs' costs, but for the Plaintiffs' choice to file a Notice to point it out.* Missed deadlines are unfortunate, but so is *exaggerating the import of a missed deadline and (predictably) generating a flurry of filings as a result.* The Plaintiffs' request for sanctions is DENIED. (Dkt.627, Page ID 12576).

After excoriating Fuller's counsel, all the while turning a *deliberate* blind eye to McCarthy' *proven deliberate* pattern of egregious misconduct, bad faith, and unclean hands, the trial court *retaliated* against Fuller's counsel by sanctioning her pursuant to 28 USC § 1927 and ordered her to pay the sum of $6,700.00 to opposing counsel. (Dkt. 977, Page ID 30132-30133). *It makes no sense for her to pay opposing counsel when if they had indeed incurred the extra hours, they would have already been paid by their own clients.*

The trial court, however, while sanctioning Fuller's counsel, observed, "The Court does not believe that Ms. Cramer acted willfully—that is, the Court does not believe that her tardiness and failure to follow the exhibit protocol were ploys to increase the Plaintiffs' costs or make things more difficult for Plaintiffs' counsel. Quite simply, Ms. Cramer was overwhelmed with the task of trying this case." (Dkt. 977, Page ID 30131-30132).

The trial court erred by sanctioning Fuller's counsel when there is no evidence that she acted in bad faith, as the court observed.

In narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel. The general rule is that a litigant cannot recover his counsel fees, but that rule does not apply when the opposing party has acted in bad faith, including bad faith in the conduct of the litigation. *In view of a court's power over members of its bar, if it may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes. In this case, the trial court did not make a specific finding as to whether counsel's conduct constituted or was tantamount to bad faith, a finding that should precede any sanction under the court's inherent powers.* [Emphasis added.] *Roadway Express v. Piper*, 447 U.S. 752, 764-767 (1980).

**10. The judgments for McCarthy on most of Fuller's Counterclaims lacks supporting evidence and instead resulted because the court failed to adhere to the Seventh Circuit's ruling in the previous interlocutory appeals and refused to properly instruct the jury concerning the limited relevance of Fuller's status as a nun.**

[The page limitation prevents more detailed discussion of this issue.]

**11. The district court applied the wrong standard when granting McCarthy summary judgment on Hartman's defamation claims and Fuller's claims for copyright, trade dress, and trademark infringement, and by dismissing Sigma Micro Corporation after telling Fuller not to brief the motion and then dismissing Sigma before it complied with discovery requests.**

During the January 13, 2014 pretrial, the lower court instructed the undersigned counsel not to file a separate brief in opposition to the motion to dismiss Albert Langsenkamp's company Sigma Micro Corp. from this litigation. (Court, at Dkt. 764.) Subsequently, the lower court granted Sigma's motion and dismissed it, before it had provided permissible discovery, on the falsely stated grounds that, "the motion was unopposed." (APX 463.) The court knew even before the Pretrial, from other filings, that Fuller opposed the motion and the court stated that it also understood the grounds for their opposition. (*Id.*) For that reason, the

court instructed them to not file an additional brief repeating their other opposition briefs. When they complied with the Court's on-the-record instruction, the court stabbed them in the back by summarily dismissing Sigma, before requiring it to provide discovery, falsely alleging that the dismissal motion was unopposed. This tactic constitutes reversible error. It also demonstrates the bias of the district judge, who had become another advocate for McCarthy.

Another example of the lower court's misleading instructions to Fuller occurred when the court, during the Pretrial, instructed counsel to summarize in chart form, instead of in a narrative brief, the discovery that McCarthy failed to provide. Fuller filed multiple charts: one for Kevin McCarthy, one for Albert Langsenkamp, one for BVM Foundation, Inc., and one for Sigma Micro Corp. Subsequently, the magistrate issued an *Entry* concerning the disputed discovery, denying many of the discovery demands because Fuller had set forth the withheld discovery in chart form (As the Court had instructed them,) without an explanatory narrative. Note: the magistrate accepted a mere "chart" from McCarthy, et al. ordering everything they demanded, despite the absence of any explanation from them, despite Fuller's complete production of more than the required discovery, and ignoring the fact that McCarthy, et al. had exceeded the permissible number of requests for every form of discovery. The magistrate applied this double standard throughout the litigation below.

## CONCLUSION

Wherefore, Appellants Fuller, Hartman, and Respondent-Appellant Cramer respectfully move the Court to reverse the September 18, 2014 *Amended Judgment,* the March 19, 2014 *Judgment,* and the final orders, together with the related interlocutory orders in the record, including, but not limited to all orders listed in the two *Notices of Appeal*, taxing costs to McCarthy, and awarding attorney's fees and interest to Fuller.

They seek remand to the district court ordering it to dismiss the *Amended Complaint* for lack of subject matter jurisdiction.  If the case is not dismissed for lack of subject matter jurisdiction, Appellants seek reinstatement of all summarily dismissed counterclaims, with remand for jury trial on all of their *Amended Counterclaims* (Dkt. 65).  They seek the return of valuable religious artifacts, as well as monetary, injunctive, and declaratory relief.

They further request judgment in Fuller's favor on all claims in the McCarthy' *Amended Complaint* (Dkt. 26) and sanctions on McCarthy and their attorneys for their willful and unethical misconduct.

Respectfully submitted,

S/ *Marilyn A. Cramer*
MARILYN A. CRAMER
Atty. Reg. No. 0032947 (OH)

Counsel to Appellants
*Patricia Ann Fuller, a.k.a.*
*Sister Mary Joseph Therese, CIT,*
*and Inspector Paul M. Hartman (Ret.),*
and
*Counsel In Propria Persona*
*as Respondent-Appellant*

THE CRAMER LAW GROUP, LLC
11470 Euclid Avenue, Suite 202
Cleveland, OH 44106
Telephone: (216) 650-2707
Fax:  (216) 421-7026
Marilyn.Cramer@gmail.com

54

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   This brief contains exactly 14,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   This brief has been prepared using a proportionally spaced typeface using Microsoft® Word, Version 14.2.3 word processing, in Century style, 12 point in the text, 11 point in the footnotes, with some headings in 14 point.

Dated: June 23, 2015                    s/ *Marilyn A. Cramer*

                                        MARILYN A. CRAMER
                                        Atty. Reg. No. 0032947 (OH)
                                        THE CRAMER LAW GROUP LLC

                                        *Counsel for Defendants-*
                                        *Counterclaimants/Appellants*
                                        *Patricia Ann Fuller, a.k.a.*
                                        *Sister Mary Joseph Therese,*
                                        *And Inspector Paul M. Hartman (Retired)*
                                        *And*
                                        *Counsel In Propria Persona*
                                        *as Respondent-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 23, 2015, I electronically filed the foregoing *Brief of Appellants,* with the Clerk of the Court of the United States Court of Appeals for the Seventh Circuit by utilizing the CM/ECF system. Parties may access this filing through the Court's system. The CM/ECF system will serve the following participants in the case, who are registered CM/ECF users.  On this same date, I also served the lead attorney of record by First Class United States Mail, postage prepaid.

> Michael A. Swift, Esquire (Lead Attorney)
> MAGINOT MOORE & BECK LLP
> 1 Indiana Square, Suite 2200
> Indianapolis, Indiana 46204
> maswift@maginot.com
>
> Bradley M. Stohry, Esquire
> REICHEL STOHRY LLP
> 212 West Tenth Street, Suite D-280
> Indianapolis, IN 46202
> brad@rsindy.com

One of the participants in the case, Larry Young, *Counter/Defendant-Appellee pro se,* is not a registered CM/ECF user. I further certify that, on this same date, I served Larry Young, with all of the above-referenced documents, by electronic mail addressed to him at lyoung@bluechipusa.net and also by first Class U. S. Mail, postage prepaid, addressed to him at 6765 East Mount Vernan Court, Gurney, IL 60031.

S/ *Marilyn A. Cramer*
MARILYN A. CRAMER